C. S. Emery & Co. *v.* United States (No. 3536)[1]

United States Court of Customs and Patent Appeals, December 19, 1932

*Barnes, Richardson & Halstead (Joseph Schwartz* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*William Whynman* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument October 5, 1932, by Mr. Schwartz and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding 11 head of pure-bred cattle to be dutiable at 1½ cents per pound under paragraph 701 of the Tariff Act of 1922 and overruling the protest claiming said cattle to be entitled to free entry under paragraph 1506 of said tariff act.

The pertinent parts of said paragraphs 701 and 1506 of said tariff act read as follows:

PAR. 701. Cattle, weighing less than one thousand and fifty pounds each, 1½ cents per pound;   *   *   *.
PAR. 1506.   Any animal imported by a citizen of the United States specially for breeding purposes, shall be admitted free, whether intended to be used by the importer himself or for sale for such purposes, except black or silver foxes:   *   *   *

It appears from the consumption entry that the cattle were imported by appellant at the port of Island Pond, Vt., as the agent of one William T. Wylie, who is named in the entry as the consignee. It appears from the invoice accompanying the consumption entry that said Wylie was the shipper of the cattle at Waterville, Quebec, and that the cattle were consigned to himself at Colebrook, N. H., to be shipped per highway.

It appears from the testimony upon the trial in the court below that said Wylie was a citizen of the United States in the employ of one Gale, a citizen of Canada, at Waterville, Quebec. Said Gale had sold the cattle to one Crowley, also a Canadian citizen but living in New Hampshire, title to pass to Crowley upon delivery of the cattle to him in New Hampshire. The cattle were shipped across the border by truck and were accompanied by Wylie.

At no time did said Wylie have title to the cattle or control over their disposition, and at the time of their importation he was acting upon behalf of Gale. It is frankly conceded by appellant's counsel, and it is established by the evidence that Wylie's connection with the importation was solely for the purpose of taking advantage of said paragraph 1506 of said Tariff Act of 1922, granting exemption from duty on cattle "imported by a citizen of the United States specially for breeding purposes."

It is appellant's contention that, as the cattle were consigned to Wylie, no inquiry may properly be made as to the real ownership of the cattle, and that, as Wylie was concededly a citizen of the United States and the cattle were concededly imported for breeding purposes, they were entitled to free entry under the provisions of said paragraph 1506.

In support of this contention, appellant relies upon section 483 of said tariff act, the pertinent part of which reads as follows:

SEC. 483. All merchandise imported into the United States shall, for the purposes of this title, be held to be the property of the person to whom the same is consigned; * * *.

We would first observe that the provision above quoted reads: "for the purposes of this title." The title referred to is Title IV of said tariff act, whereas paragraph 1506, relied upon by appellant, is found in Title II of said act.

It is clear that the provisions of said section 483 were intended for the benefit and protection of the Government, to simplify the collection of revenue; and under said section, if the cattle are dutiable, Wylie was clearly liable for the payment of the duties assessable thereon.

We would further observe that in the Tariff Act of 1913, the predecessor of the Tariff Act of 1922, paragraph B of Section III reads as follows:

B. That all merchandise imported into the United States shall, *for the purpose of this Act,* be deemed and held to be the property of the person to whom the same is consigned; * * *. (Italics ours.)

It will be noted that, whereas the provision in the Tariff Act of 1913 was "for the purpose of this Act," this language has been changed in the Tariff Act of 1922 to read "for the purposes of this title."

However, whether the provisions of said section 483 are applicable to control any of the provisions of said Tariff Act of 1922, outside of Title IV, we need not here inquire, for we are clear that they do not control the construction of said paragraph 1506, because so to hold would nullify the plain intent of Congress in the enactment of said paragraph.

Appellant contends that the object of the provision of paragraph 1506 is to improve the breed of domestic animals. That unquestionably is its principal object, but in furthering such object the

privilege of free importation is limited to citizens of the United States. It clearly was never intended by Congress that mere dummies, such as Wylie was, might be used by an owner of cattle to secure the privilege of exemption of duty. The paragraph reads: "whether intended to be used by the importer himself or for sale for such purposes." In the case at bar Wylie did not intend either to use the cattle or sell them for breeding purposes; at most, he was the mere agent of the real owner, who was a citizen of Canada. To admit appellant's contention would practically defeat the intention of Congress in granting exemption from duty under said paragraph 1506 to citizens of the United States. We are of the opinion that Congress intended to encourage the improvement of the breed of domestic animals but in furthering such purpose intended to give to citizens of the United States an advantage over one who was not such citizen.

The real importer of the cattle in question was a Canadian citizen, and we hold that the use of his hired man as a dummy does not entitle him to free admission of the cattle in question.

In the foregoing we do not wish to imply any attempted, actual fraud upon the part of the Canadian owner, Mr. Gale. He perhaps was advised that he was within the law in the course that he took, but we do not so construe the tariff act here in question.

The judgment of the United States Customs Court is *affirmed.*

### DISSENTING OPINION

GARRETT, Judge: I am unable to agree to the conclusion reached by the majority.

As I interpret the Tariff Act of 1930 the provision of section 483, appearing in Title IV thereof, to the effect that all merchandise imported, for the purpose of administering the act, shall be held to be the property of the person to whom same is consigned, is a general rule applicable to all pertinent paragraphs of all titles of the law, unless some particular paragraph is so worded as to make a different rule applicable. Such I understand to be the view of the majority of the members of this court, and the majority opinion in this case does not seem to hold otherwise but does give to paragraph 1506 a construction which eliminates it from that general rule.

I find nothing in the language of the paragraph which appears to me to justify such a construction.

I do agree that—

the provisions of said section 483 were clearly intended for the benefit and protection of the Government, to simplify the collection of revenue,

and it seems to me that to disregard its plain and mandatory terms may open a Pandora's box for those charged with the administration of the customs laws.

Upon the assumption that the principal object of the admission of breeding stock duty free is to improve the breed of domestic animals I am unable to see where in the transaction at issue the Government suffers in any wise by admitting this shipment free. It is true, of course, that the right to make a duty-free importation is limited to citizens of the United States, but they may be imported for use by the importer himself, for breeding purposes, or "for sale for such purposes." There is no requirement that, if sold, the sale shall be to an American citizen. I apprehend they might be sold to any person, whether citizen or alien, without becoming subject to duty, and that it is immaterial for tariff purposes whether the title to the animals passes before or after importation. I can not conceive that it is the duty of the collector of customs to ascertain actual ownership. The collector is concerned only with the proper enforcement of the customs laws and not with questions of title. For all the purposes in which he has an official interest, the statute declares who the owner is. The dangers and difficulties in administration which the majority decision may lead to, if taken as a precedent, to my mind far outweigh the importance of the few dollars duty on the involved importation which admittedly was made for the very purpose specified in the statute, that of breeding, and made, upon the face of the official papers, by a citizen of the United States.

Furthermore, it is noted the first and second provisos of said paragraph 1506 read:

\* \* \* *Provided*, That no such animal shall be admitted free unless pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed: *Provided further*, That the certificate of such record and pedigree of such animal shall be produced and submitted to the Department of Agriculture, duly authenticated by the proper custodian of such book of record, together with an affidavit of the *owner*, *agent*, or *importer* that the animal imported is the identical animal described in said certificate of record and pedigree \* \* \*.

By using the words "owner, agent, or importer," which I have italicized, in the foregoing quotation the Congress seems to me to have clearly indicated that the importer need not necessarily be the actual owner.

In my opinion the contention of appellants should be sustained.

HATFIELD, Judge, concurs in the dissent.